## CHAPIN et al. v. BROWN.*

### No. 18,147; October 14, 1893.

#### 34 Pac. 525.

**Partnership—Accounting—Novation.—A Lumber Firm Agreed** with two of its members to sell them sawed lumber at a certain price. The two members formed a new firm, and one of them sold his interest in the contract to the other, and the latter sold interests therein to two strangers. The old firm continued to sell to the purchasing concern under the agreement, and to receive payment therefrom, without regard to its personnel, the bills being in all instances made out in the name of the purchasing concern. There was no evidence of any agreement to release the original contractors. Held, that there was no novation, and the lumber firm could sue one of the purchasing members for an accounting without joining his new associates in the purchasing contract.

APPEAL from Superior Court, Fresno County; M. K. Harris, Judge.

Action by J. E. Chapin, T. E. Peckinpagh and Charles Peckinpagh against Albert Brown for an accounting. Judgment for plaintiffs. Defendant appeals. Affirmed.

R. P. Davidson for appellant; J. R. Webb and L. L. Cory for respondents.

VANCLIEF, C.—On August 15, 1887, the plaintiffs and the defendant were copartners doing business in the firm name of Sugar Pine Mill and Lumber Company. Their business was that of manufacturing and selling lumber. They owned one hundred and sixty acres of timber land, upon or near which they had built a sawmill. On August 15, 1887, a written contract between the copartnership and two of its individual members, namely, Chapin and the defendant Brown, was executed, by which the copartnership agreed to sell to Chapin and Brown, and the latter agreed to purchase, all the lumber to be sawed from the timber then standing or fallen on the said one hundred and sixty acres of land, "or that may be sawed in the mill of the said parties of the first

*For subsequent opinion in bank, see 101 Cal. 500, 35 Pac. 1051.

part [the copartnership] from other claims before finishing
sawing the timber from the above-described claim [the one
hundred and sixty acres]'' at the price of $9 per thousand feet,
to be delivered in the mill-yard.   The parties of the first part
further agreed that after the year 1887 they would deliver, as
aforesaid, ''an annual amount of one million feet or more, at
the option of the said second parties.''   The agreement con-
tains other stipulations not relevant to the issues in this case.
On the same day (August 15, 1887) another agreement was
executed between the copartnership and two others of its mem-
bers, namely, T. E. Peckinpagh and Charles Peckinpagh, by
which the latter agreed to cut, haul, and saw into lumber all
the timber on said one hundred and sixty acres of land, and
to stack the lumber in said mill-yard, for which they were to
be paid $6 per thousand feet.   As to the amount of lumber to
be sawed, they agreed to be governed by the above-mentioned
contract with Chapin and Brown.   For the purpose of per-
forming this contract they were to have the use of said mill,
but were to keep it in repair.   This contract also contains
matters not material to this case.   Chapin and Brown assumed
to constitute a distinct copartnership under the firm name of
North Fork Lumber Company, and transacted the business
under their contract with the Sugar Pine Mill and Lumber
Company in that name; but at some time prior to January 1,
1888, Chapin assigned his interest in their contract with the
Sugar Pine Mill and Lumber Company to Brown, who agreed
with him to perform all its obligations, and withdrew from
the North Fork Lumber Company.   Brown continued the
business under the contract in the name of North Fork Lum-
ber Company until January, 1888, when he assigned an
interest in the contract to John Bartram, and on May 1, 1888,
assigned another interest to B. F. Ellis.   After these assign-
ments, Brown, Bartram and Ellis constituted the North Fork
Lumber Company, and conducted the business with the Sugar
Pine Mill and Lumber Company under the lumber contract
in that name.   In the fall of 1888, T. E. and Charles Peckin-
pagh assigned their contract with the Sugar Pine Mill and
Lumber Company of August 15, 1887 (above set out), to the
North Fork Lumber Company.   By the performance of this
contract on the part of the Peckinpaghs, the North Fork
Lumber Company became entitled to receive from the Sugar

Pine Mill and Lumber Company $6 per thousand feet for manufacturing the lumber which they were to purchase from the latter company at the price of $9 per thousand. From and after this assignment by the Peckinpaghs, Charles Peckinpagh was employed by the North Fork Lumber Company, at a salary, to do the sawing, and he continued in that position during the years 1890 and 1891.

The object of this action is to dissolve the Sugar Pine Mill and Lumber Company, to compel an accounting between its members, and especially between the copartnership and the defendant, who, it is alleged, owes the concern a balance of $3,090 for lumber delivered to the North Fork Lumber Company during the year 1890,. under the contract first above mentioned, called the "purchasing contract." The court found him to be individually responsible on that contract, and that he was indebted on that account to the other members of the company as follows: To Charles Peckinpagh, $427.45; to T. E. Peckinpagh, $471.85; to J. E. Chapin, $483.80—amounting to $1,383.18; and consequently that he was indebted to the. copartnership (of which he was an equal member) in the sum of $1,844.14. The judgment was in accordance with this finding. The defendant appeals from the judgment and from an order denying his motion for a new trial.

1. The appellant contends that there was a novation of the purchasing contract by which the assignees of portions thereof were substituted for the original contractors (Brown and Chapin) by consent of the Sugar Pine Mill and Lumber Company, and therefore that appellant is not individually liable, as found by the court. It is not claimed, however, that there was any evidence of such novation, or consent thereto, by the Sugar Pine Mill and Lumber Company, other than the facts that the lumber was delivered to and paid for (so far as payments were made) by the North Fork Lumber Company, as constituted at the times of such delivery and payments. Brown never assigned all his interest in the purchasing contract, but remained a member of the North Fork Lumber Company during all its transactions with the Sugar Pine Mill and Lumber Company. Nor is there any evidence that the latter company ever agreed or consented to discharge him or Chapin from their obligation on that contract, to accept Bartram or Ellis in their stead for any part of such obligation. No objec-

tion on the ground of misjoinder or nonjoinder of parties to the action was made by demurrer or answer, or otherwise, in the court below, nor is any point made here on this ground. All the parties to the purchasing contract and all the members of the Sugar Pine Mill and Lumber Company were before the court, and, as there is no novation of that contract, neither Bartram nor Ellis was a necessary party to the accounting. The state of accounts between the members of the North Fork Lumber Company is immaterial for any purpose of this action.

2. The only other point requiring consideration arises on the following additional facts: During the year 1890, while Charles Peckinpagh was doing the sawing for the North Fork Lumber Company, as aforesaid, he and a Mrs. Bearden sold and delivered to the North Fork Lumber Company a lot of logs cut from other lands than the one hundred and sixty acres belonging to the Sugar Pine Mill and Lumber Company, and to which the latter company held no title. These logs were sawed by Charles Peckinpagh during 1890, while employed by the North Fork Lumber Company, as aforesaid, and produced 683,923 feet of lumber, which was piled in the mill-yard, and thence removed by the North Fork Lumber Company. The evidence tends to prove that these logs were sawed with the knowledge and consent of the plaintiffs, and with an understanding between plaintiffs and the North Fork Lumber Company that the latter was to pay the Sugar Pine Mill and Lumber Company, for the use of their mill in sawing those logs, fifty cents per thousand feet; and it appears that a large portion of the lumber sawed from those logs must have entered into the estimate of the 1,030,000 feet alleged and found to have been delivered to defendant in 1890, under the contract set out in the complaint. The appellant contends that the lumber produced from those logs purchased by the North Fork Lumber Company never was the property of the Sugar Pine Mill and Lumber Company, and therefore could not have been sold or delivered as such, under the contract set out in the complaint, and that the Sugar Pine Mill and Lumber Company were entitled to charge only for the use of the mill in sawing those logs at the agreed price of fifty cents per thousand instead of $3 per thousand, which they were to receive for the lumber sawed from timber taken from the land of the Sugar Pine Mill and Lumber Company. Thus

far, perhaps, appellant is right, but his assumption that in the accounting the court credited the Sugar Pine Mill and Lumber Company $3 per thousand for the lumber sawed from the logs purchased by the North Fork Lumber Company is not sustained by the record. Assuming that all the lumber sawed before January 1, 1890, had been paid for before the commencement of this action, as seems to be admitted, and that only the lumber sawed in 1890 and 1891 is involved, as appears by the findings of the court, and also assuming that only fifty cents per thousand was credited to the Sugar Pine Mill and Lumber Company on account of the 683,923 feet produced from the logs purchased by the North Fork Lumber Company, and $3 per thousand for all the lumber sawed from other timber during 1890 and 1891, viz., 735,121 feet, yet the judgment against the defendant would seem to be considerably less than it should have been. The 735,121 feet sawed from other timber than logs purchased by the North Fork Lumber Company, at $3 per thousand, would amount to $2,205. Deduct from this one-fourth thereof for defendant's share, and the remainder due the other three partners is $1,654, whereas only $1,383.18 was allowed them by the court. This result is justified by the fact that the accounting was not confined to the year 1890, during which the logs purchased by the North Fork Lumber Company were sawed, but included, without objection, the 389,044 feet of lumber produced from other timber during 1891. It may be that the defendant was properly credited with payments or setoffs not shown by the record, which accounts for this result. However this may be, it is enough for the disposition of this appeal that the record shows no error prejudicial to the appellant. I think the judgment and order should be affirmed.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.